WILLIAM F. SNIDER and WILMA K. SNIDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snider v. Commissioner
Docket No. 6643-78.
United States Tax Court
T.C. Memo 1981-591; 1981 Tax Ct. Memo LEXIS 152; 42 T.C.M. (CCH) 1403; T.C.M. (RIA) 81591; October 13, 1981. William F. Snider, pro se. Robert J. Kastl, for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioners' Federal income tax in the amounts of $ 344.73 and $ 388.00 for the taxable years 1975 and 1976, respectively. *153 The only issue for decision by the Court is whether petitioner William F. Snider, the noncustodial parent, is entitled to the dependency exemptions for his two daughters under section 152(e)(2)(B). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At the time they filed their petition in this case, petitioners, husband and wife, resided in Moorefield, West Virginia. They filed timely joint Federal income tax returns for the years 1975 and 1976 with the Internal Revenue Service Center at Memphis, Tennessee. Petitioner Wilma K. Snider is a party to this proceeding solely because she filed joint returns with her husband, and the term petitioner will hereinafter refer to William F. Snider. In July of 1970 petitioner and his then wife, Nancy Ann Snider, were divorced and Mrs. Snider was awarded custody of the two children of the marriage, Barbara Ann Snider ("Barb") and Nancy Elizabeth *154 Snider ("Sam"). The mother retained custody of the children at all times relevant to this case. Pursuant to the order of divorce, petitioner was directed to pay $ 75 for each child or $ 150 per month child support. During each year 1975 and 1976, petitioner paid total child support of $ 1,800. On his tax returns for those years petitioner claimed dependency exemptions for Barb and Sam and indicated that he furnished all of their support. Mrs. Snider also claimed the daughters as her dependents, and respondent has allowed the dependency exemptions to the mother. In 1975 Barb was about 15 years old and Sam about 13. During 1975 and up until September of 1976 they lived with their mother in a house located on Elm Street in Moorefield, West Virginia. At that time Mrs. Snider and her daughters moved to a house on West Burke Street in Martinsburg, West Virginia. The mother owned the house in Moorefield and later the house in Martinsburg, and at each location the household consisted of Mrs. Snider and the two teen-aged daughters. The house in Moorefield was an old Victorian house built about 1889. It had nine rooms, a tower, only one bathroom, and a tin roof in need of constant *155 repairs. The house was furnished with nice Victorian antique furniture but modern appliances such as a dishwasher and self-cleaning oven. After Mrs. Snider and her daughters vacated the Victorian house, it remained vacant for about a year and a half, was then briefly rented unfurnished for $ 150 per month, then rented a second time for $ 150 per month to tenants who failed to pay the rent and who inflicted a lot of damage on the house. Ultimately Mrs. Snider sold the house in 1978 for $ 19,500. The house Mrs. Snider purchased in Martinsburg was also a Victorian house for which she paid $ 25,500. That house was furnished with the Victorian furniture that she had moved from the other house. The fair rental value of the house in Moorefield for 1975 was at least $ 360. The fair rental value of the house in Moorefield for eight months of 1976 was $ 240, and the fair rental value of the house in Martinsburg for four months of 1976 was at least $ 600, for a total of $ 840 for the year. In addition to her job, Mrs. Snider attended school at night to try to complete work on her master's degree. Because of her job and night school, she had to have domestic help to assist with the *156 house cleaning and to stay with her daughters in the evenings. Because she felt that the child support payments she was receiving from petitioner were inadequate and because she planned to return to the local court to seek an increase in these child support payments, Mrs. Snider made a regular practice of documenting her expenditures for the girls. She paid almost all of the bills by check and noted on the checks, either at the time the checks were written or upon their return from the bank, the purpose for each expenditure. Mrs. Snider made the following expenditures for household expense, one-third of which is allocable to each girl, and specific items of support for each girl as follows: 1975
Household Expenses
Groceries
$ 1,560.00
Fair Rental Value of House
360.00
Water & Sewer
85.49
Telephone (basic charge only)
180.00
Electric
409.41
Oil
292.92
Maintenance, Repairs to House
and Appliances
1,344.14
Washing Machine
184.37
Household Furniture
559.80
Cleaning Woman & Child Care
425.00
Total
$ 5,401.13
Barb
Sam
Allocable Share (1/3) of
Household Expenses
$ 1,800.38
$ 1,800.38
Clothing
287.51
188.61
Additional Clothing & Shoes
63.75
63.75
Medical & Dental Expenses
635.60
163.00
Medicine
31.21
0
School Yearbooks
10.00
10.00
Swimming Pool Fee
12.50
12.50
High School Trip
50.00
0
Radios
29.96
25.62
Dinner at Caledonia Club
7.60
7.60
Cheerleader Expenses
0
22.60
Easter Baskets
4.76
4.76
Misc. Christmas Items
18.62
18.62
Spending money
63.50
33.50
Bed and Chest of Drawers
97.85
0
Dust Ruffles for Bedrooms
19.79
19.79
Total Support for Year
$ 3,133.03
$ 2,370.73
Less Child Support Payments
900.00
900.00
Support Furnished by Mother
$ 2,233.03
$ 1,470.73
*157 1976
Household Expenses
Groceries
$ 1,680.00
Fair Rental Value of Housing
840.00
Cable TV
41.44
Water & Sewer
91.30
Telephone (basic charge only)
180.00
Electric
444.21
Oil
310.86
Gas
54.62
Maintenance & Repairs to House
435.20
Cleaning Woman & Child Care
457.20
Total
$ 4,534.83
Barb
Sam
Allocable Share (1/3) of
Household Expenses
$ 1,511.61
$ 1,511.61
Spending money
49.00
41.00
Medical
212.43
172.42
Additional Medical Expense for
Both Girls
22.26
22.26
Pictures
0
5.67
Posters
4.15
4.15
Candles
0
5.20
Items for Bedroom
13.00
0
American College Testing Program
7.50
0
High School Yearbooks
8.00
8.00
Cosmetics
0
3.50
Radio
0
56.65
Christmas
51.56
26.51
Trip to NYC
49.90
0
Theatre tickets
15.75
15.75
Clothing
165.32
293.10
Additional Clothing
126.92
126.92
Mattresses
196.00
196.00
Total Support for Year
$ 2,433.40
$ 2,488.74
Less Child Support Payments
900.00
900.00
Support Furnished by Mother
$ 1,533.40
$ 1,588.74
In addition to the above items, Mrs. Snider also made miscellaneous cash expenditures for her daughters each year. During 1975 and 1976 petitioner *158 did not visit his daughters or otherwise exercise his visitation rights. He did not make any gifts to his daughters in 1975 but in 1976 he sent Barb $ 50 as a graduation gift. Other than that $ 50 gift and the child support payments pursuant to the divorce decree, he made no other payments for his daughters in 1975 and 1976. During the years 1975 and 1976, the daughters received all of their support from their parents, except for small gifts that they received from Mrs. Snider's parents. OPINION In the case of children of divorced parents, section 152(e) provides special rules for determining which parent is entitled to the dependency exemptions for the children. As a general rule, the custodial parent, here the mother, is deemed to have contributed over half of the support for the children and is entitled to the dependency exemptions. Section 152(e)(1). However, there are some exceptions to the general rule. For example, where the noncustodial parent, here petitioner, has furnished $ 1,200 or more for the support of such child (or if there is more than one child, $ 1,200 or more for all of the children), [2] section 152(e)(2)(B) creates a rebuttable presumption that the noncustodial *159 parent has provided more than half the support of the children. The burden then shifts to the custodial parent to "clearly establish" that she furnished more for the support of each child than the noncustodial parent furnished. Here petitioner has provided $ 1,800 for the two children each year and is entitled to the benefits of the statutory presumption. Since the custodial parent, the mother, is not before the Court, the burden thus shifts to respondent to clearly establish that the mother furnished more support for each of the children than petitioner furnished. , affd. per curiam . That means respondent must show by a clear preponderance of the evidence that the mother furnished more than half of the support for each child for each year. . Respondent has sustained his burden *160 of proof. The facts clearly establish that Mrs. Snider furnished far more support for each of her daughters than petitioner furnished each year. Because Mrs. Snider was contemplating returning to the family court to seek an increase in her child support payments, she had maintained detailed records of her expenditures for the household and for each of her daughters during the years involved in this case. Those records were in the form of cancelled checks with memorandum notations placed on the checks at the time they were written or upon their return from the bank. [3] Petitioner makes much of the fact that some of these notations were written in a shade of ink different from that used in the body of the check. Mrs. Snider explained that that occurred when she made notations later when the checks returned from the bank. The Court found Mrs. Snider to be a credible and forthright witness and is satisfied that all notations were made reasonably contemporaneous with the expenditures in this case. Based on the record, petitioner is not entitled to the dependency exemptions for his daughters. *161 Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years involved in this case, unless otherwise indicated.↩
2. Section 2139 of the Tax Reform Act of 1976 amended section 152(e)(2)(B) to provide that the noncustodial parent must contribute at least $ 1,200 for each child, but the amendment applies only to taxable years beginning after October 4, 1976. Pub. L. 94-455, 90 Stat. 1932.↩
3. The Court based most of its findings on figures established by Mrs. Snider's cancelled checks, using estimates only for groceries and for the fair rental value of the housing furnished by Mrs. Snider each year. The estimates for food were quite reasonable for one adult and two teen-aged daughters. The estimates for the fair rental value of housing were probably much too low. However, the Court used the very low figure of $ 30 per month for the Moorefield house, which was the figure that petitioner contended for. That very low figure was used by the Court to demonstrate that, even with that rock-bottom figure on this major item of child support, Mrs. Snider nonetheless clearly furnished far more support than petitioner furnished. The Court found petitioner's argument that he had provided all of his daughters' support ($ 900 each per year) inherently incredible. The Court could only conclude that petitioner did not and could not reasonably believe that he had furnished more than half of his daughters' support, but merely wished to harass Mrs. Snider. This was amply demonstrated at the trial by his unwarranted attempt to show that Mrs. Snider allegedly had unreported income and by his continued efforts to re-try the divorce proceedings despite the Court's repeated admonition that that was not the issue before the Tax Court.↩